# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

**DONALD R. WHITFIELD**                                                                                           **PETITIONER**

**v.**                                            **No. 1:13CV81-SA-SAA**

**STATE OF MISSISSIPPI, ET AL.**                                               **RESPONDENTS**

## MEMORANDUM OPINION

This matter comes before the court on the pro se petition of Donald R. Whitfield for a writ of habeas corpus under 28 U.S.C. § 2254. The State has responded to the petition; Whitfield has replied and provided additional briefing. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

### Facts and Procedural Posture

The petitioner, Donald R. Whitfield, is lawfully in the custody of Ronald King, Superintendent of the South Mississippi Correctional Institution in Leakesville, Mississippi. Whitfield was convicted of one (1) count of fondling and one (1) count of sexual battery in the Circuit Court of Monroe County, Mississippi. On July 1, 2010, he was sentenced to serve seven (7) years with five (5) years suspended and five (5) years post-release supervision for fondling, and thirty (30) years for sexual battery in the custody of the Mississippi Department of Corrections. *See* State Court Record (hereinafter "SCR"), Vol. 1, p. 94 - 97.

The Petitioner filed an appeal of his convictions and sentences in the Mississippi Supreme Court, raising the following issue (as stated by counsel):

    Issue I.        The verdict was against the overwhelming weight of the evidence.

On November 15, 2011, the Mississippi Court of Appeals affirmed the judgment of the Circuit Court. *Whitfield v. State,* 89 So.3d 623 (Miss.Ct.App. 2011), *reh'g. denied,* Mar. 20, 2012, *cert. denied,* May

31, 2012 (Cause No. 2010-KA-01238-COA).

On October 19, 2012, Whitfield filed an Application for Leave to Proceed in the Trial Court with a Motion for Post-Conviction Relief ("PCR") in the Mississippi Supreme Court. He raised the following issues *pro se*:

> Issue One. Weather [*sic*] Count II was fatally defective for omitting an essential element and Petitioners name?
>
> Issue Two. Weather Judge could amend indictment through jury instructions, adding essential element not charged by grand jury in Count II or insert Petitioner name in said count.
>
> Issue Three. Weather there was sufficient evidence no proof of age to uphold conviction Count II?
>
> Issue Four. Weather the affidavits gave rise to probable cause or ever gave officer authority to search?
>
> Issue Five. Weather good faith could apply without probable cause?
>
> Issue Six. Weather petitioner was denied his right to confront witnesses against him?
>
> Issue Seven. Weather trial and appellate councel [*sic*] were deficient?

On January 17, 2013, after a response from the State, the Mississippi Supreme Court filed an order denying the application. Whitfield v. State of Mississippi, No. 2012-M-00716 (order filed January 17, 2013).

Whitfield filed the instant petition for a writ of *habeas corpus* on April 19, 2013, raising the following issues *pro se*:

> Ground One. Whether Count II was fatally defective for omitting an essential element and Petitioner's name?
>
> Ground Two. Whether judge could amend indictment through jury instructions adding essential element not charged by grand jury in Count II or insert Petitioner's name in said count?

| | |
|---|---|
| Ground Three. | Whether the affidavits gave rise to probable cause or were so facially deficient or gave officer authority to search? |
| Ground Four. | Whether Petitioner was denied his right to confront witnesses against him in violation of the sixth (6th) amendment? |
| Ground Five. | Whether trial and appellate counsel were deficient? |

## Grounds Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered all five grounds of the petition on the merits and decided those issues against Whitfield; hence, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since Whitfield's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas corpus* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to the petitioner's claims.

Nevertheless, under § 2254(d)(2) the grounds in the instant petition may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, Whitfield has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

**Facts Established at Trial**

After spending Easter weekend of 2007 with her father and stepmother, ten-year-old D.W.[1] began crying when it was time to go back to her mother's house, her primary residence. (SCR, p. 268). D.W.'s father, after speaking with his daughter, drove her to Gilmore Memorial Hospital where she told social worker Deborah Rogers that the petitioner, Donald Whitfield had been touching her in her vaginal and rectal areas with his penis. (SCR, p. 185). Whitfield was the boyfriend of D.W.'s mother – and lived with D.W., her mother, and her two younger half-siblings. (SCR, p. 267). D.W. then underwent a medical examination at Rush Hospital and for a forensic interview with a social worker at Wesley House. (SCR, p. 143). During the forensic interview, D.W. revealed "a series of abuses that occurred beginning at the ages of four or five." (SCR, p. 198). D.W. explained to the counselor that the latest abuse had taken place at her mother's house on the Thursday before that Easter weekend, when she returned to her father's house:

> She said that after school right after she got home [Donald Whitfield] called her into his bedroom, pulled off her clothes from the waist down as well as his own clothes from the waist down. Then he rubbed his boy thing . . . on her middle part . . . until white stuff came out all over the outside of her middle part.

(SCR, p. 199). She further explained that there had been approximately twelve separate times that white stuff had come out and that Whitfield had made her suck on his "boy thing" about fourteen or fifteen times. (SCR, p. 200). The medical examination revealed that D.W. had "a white [vaginal] discharge, and she had what appeared to be healed vesicular lesions around her genitalia on the labia minor." (SCR, p. 220). The condition of D.W.'s hymenal tissue was consistent with sexual penetration. (SCR, p. 221).

---

[1] The court will use the initials of the minor victim (rather than her name) to protect her privacy.

After the medical examination and forensic interview, Whitfield became a suspect. (SCR, p. 144). He was later arrested and charged with one count of fondling in violation of Miss. Code Ann. § 97-5-23, one count of sexual battery, specifically "inserting his penis inside the mouth of [D.W.]," in violation of Miss Code Ann. § 97-3-95, and one count of sexual battery, specifically "inserting his penis inside the vagina of [D.W.]," in violation of Miss Code Ann. § 97-3-95. (SCR, Vol. 1, p. 13-14).

Evidence at trial established that a number of tests for sexually transmitted diseases were performed on both Whitfield and D.W. The following tests were performed on D.W. on April 11, 2007:

    Rush Hospital                                                     Test for HSV I/II IGG[2]
                                                                  Result - Negative

    Rush Hospital                                                     Test for HSV I/II IGM[3]
                                                                  Result - Positive

(SCR, Exhibit 4).

    Rush Hospital                                                     Test for Trichomonas
                                                                  Result - none seen

(SCR, Exhibit 5). The herpes tests were non-specific tests for either of the herpes viruses (Simplex I (cold sores) and Simplex II (genital herpes) – and thus did not reveal to which virus D.W. was exposed. (SCR, p. 230). The following additional tests were performed on D.W. on September 15, 2009:

    Dr. Cooper                                                          Test for HSV I/II IGG
                                                                 Result - Positive

---

[2] Dr. Cooper testified that IGG "is a part of the immune system that the body forms antibodies to a virus later on, after an acute or recent infection." (SCR, p. 247).

[3] Dr. Cooper testified that IGM "is the first part of the immune system that reacts when a body is exposed to something." (SCR, p. 247).

| | |
|---|---|
| Dr. Cooper | Test for HSV I/II IGM<br>Result - Negative |

(SCR, Exhibits 6). Again these tests were non-specific tests which meant that they did not distinguish between Herpes Simplex Virus I and Herpes Simplex Virus II. (SCR, p. 247).

| | |
|---|---|
| Dr. Cooper | Test for Trichomonas<br>Result - 1 - 3 HPF |

(SCR, Exhibit 7). Dr. Cooper testified that the reason D.W. could have initially had a negative trichomonas test result, then later a positive result for two reasons: (1) the type of swab used in the tests[4] and (2) the incubation period before you can actually visualize a trichomonas protozoa.[5] (SCR, p. 251).

In October of 2009 D.W. was tested again by Dr. Cooper:

| | |
|---|---|
| 10-21-09 | HSV/I IGG<br>Result - Negative |
| 10-21-09 | HSV/II IGG<br>Result - Negative |

(SCR, Exhibit 11). When asked on cross-examination about the difference in these tests and the ones performed in September, Dr. Cooper explained that "when a body experiences an outbreak and has to fight off the virus, it produces antibodies that form the IGG immunoglobulin." (SCR, p. 257). She then testified that, based upon both the September herpes tests and the October herpes tests: "I have to opine that she had been exposed but not had an outbreak so that her body has not produced the

---

[4] The first test was a swab of the vaginal discharge and the second test was an intra-vaginal swab. (SCR, p. 231 and 252).

[5] The incubation period for trichomonas protozoa is three to six months and often cannot be detected prior to that time. (SCR, p. 251).

- 7 -

antibodies against the virus." (SCR, p. 258).[6]

The following tests were performed on Donald Whitfield[7] by Dr. Smith:

| | | |
|---|---|---|
| 4-16-07 | | HSV/I<br>Result – Positive |
| 4-16-07 | | HSV/II<br>Result - Negative |
| | | HSV/AB IGM<br>Result – Negative |

(SCR, Exhibit 1). The testimony of Dr. Smith indicated that these results meant that Whitfield had Herpes Virus Type One and also indicated that this type of virus could be transmitted sexually and that it could appear on the genitalia. (SCR, p. 182).

| | | | |
|---|---|---|---|
| 4-26-07 | | Gilmore Memorial | HPVI/II IGM<br>Result - Negative |

(SCR, Exhibit 12).

| | | | |
|---|---|---|---|
| 4-26-07 | | Gimore Memorial | HPV II IGG<br>Result – Negative |

(SCR, Exhibit 13). These two test results were entered by stipulation. (SCR, p. 287). Whitfield tested negative for Herpes Virus Type Two on an IGG test. (SCR, p. 287). He was not tested specifically for Type One. (SCR, p.287).

| | | | |
|---|---|---|---|
| 2-4-09 | | Dr. Thomas | HSV/I IGG<br>Result - Positive |
| 2-4-09 | | Dr. Thomas | Test for HSV/II IGG<br>Result - Negative |

---

[6] In fact, the lab results themselves state: "these results should not rule out a diagnosis of Herpes Simplex viral disease." (Exhibit 11).

[7] Some of these tests were performed as the result of search warrants. Others were performed at the request of Whitfield, himself.

(SCR, Exhibit 14). Dr. Thomas also testified that Type One could appear on the genitals. (SCR, p. 303).

| 12-22-09 | Dr. Cooper | Test for Trichomonas Result - 1-3 HPF |
|---|---|---|

(SCR, Exhibit 10). The day after Dr. Cooper tested him, Whitfield went to see a local doctor, Dr. David Bell, to be tested for various sexually transmitted diseases. (SCR, p. 290-91). Dr. Bell tested him for gonorrhea and chlamydia, both of which were negative, but did not test him for Trichomonas because he had no discharge at the time and Dr. Bell did not see a need to do so. (SCR, p. 293, 298, and Exhibit 15).

Both Whitfield and D.W. testified at trial. Whitfield denied any abuse; however, D.W. testified in detail about abuse, stating that, after Whitfield called her to the bedroom, he:

> put me on the bed and pulled my pants down . . . he took his pants off . . [he touched] on my breasts. . . . He stuck his penis inside my private area . . . . It hurt and I was crying. . . . white stuff came out [of] his penis.

(SCR, p. 270 - 271). D.W. further testified that Whitfield began molesting her in that way when she was five or six years old – and that he had made her perform oral sex on him in the past. (SCR, p. 272). Whitfield was ultimately convicted of fondling and sexual battery for "inserting his penis inside the mouth of [D.W.]." The jury was unable to reach a verdict with regard to the final count of sexual battery for "inserting his penis in the vagina of [D.W.]" As stated above, Whitfield was sentenced to serve seven years, with five suspended and two to serve, for the fondling charge and to serve thirty years for the sexual battery charge; the court ordered that the sentences be served consecutively – a total of 32 years' incarceration without the possibility of parole. (SCR, Vol. 1, p. 94-97.)

**Ground Four:  The Confrontation Clause**

The court will first address Ground Four of the instant petition for a writ of *habeas corpus* because it is the most complex.  Whitfield was convicted on only two of the three counts of the indictment:  Count I (fondling) and Count II (sexual battery through oral penetration).  The jury could not reach a verdict as to Count III (sexual battery through vaginal penetration).  In his state application for post-conviction collateral relief, Whitfield alleged, "The 6th Amendment [says that] the defendant has a right to confront witnesses against him.  With a test result [for trichomonas] that was visual and no one named who did it and witnesses allowed to testify to its results violated the 6th Amendment."  E.C.F. doc. 12-8, p. 53.  The exhibit Whitfield included makes clear that he challenges the introduction of the lab reports showing that he and D.W. tested positive for trichomonas.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI., cl. 2.  Thus, the Sixth Amendment guarantees a defendant's right to confront witnesses who "bear testimony" against him.  *Crawford v. Washington*, 541 U.S. 36, 51, 124 S.Ct. 1354 (2004).  The Confrontation Clause applies only to statements offered to prove the truth of the matter asserted.  *Williams v. Illinois*, ⎯⎯ U.S. ⎯⎯, 132 S.Ct. 2221, 2228 (2012)(plurality opinion), *Crawford*, 541 U.S. at 59, n. 9.  A witness's testimony against a defendant is therefore inadmissible "unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination."  *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527 (2009) (citing *Crawford*, 541 U.S. at 54).  In *Melendez-Diaz*, the Court held that laboratory analysts who signed certificates regarding testing results were witnesses bearing testimony against a criminal defendant – and, under the Sixth Amendment, must be present at trial and available for cross-examination.  *Id*. at 311.

This is precisely the issue Whitfield raises in the instant case. None of the laboratory technicians who conducted trichomonas testing was present in the courtroom to testify against Whitfield, and he never had a prior opportunity for cross-examination. Instead, the statements of the technicians (in the form of lab reports) were introduced into evidence and interpreted by expert witnesses. Under these facts, Whitfield has established a claim for violation of his Sixth Amendment right to confront the witnesses against him. The court's analysis does not, however, end here. The Mississippi Supreme Court denied Whitfield's application for state post-conviction collateral relief without written opinion, holding "After due consideration, the panel finds that the petition should be denied." *Whitfield v. State of Mississippi*, 2012-M-00716 (order of January 16, 2013). The court must treat the Mississippi Supreme Court's denial as a ruling on the merits:

> When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.

*Harrington v. Richter*, 562 U.S. 86, 99, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011) (internal quotation marks omitted). The presumption "is a strong one that may be rebutted only in unusual circumstances." *Johnson v. Williams,* ––– U.S. –––, 133 S.Ct. 1088, 1096 (2013). The Mississippi Supreme Court upheld Whitfield's conviction, despite his Confrontation Clause argument. In this situation, a petitioner "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." *Cullen v. Pinholster*, ––– U.S. –––, 131 S.Ct. 1388, 1402, 179 L.Ed.2d 557 (2011). The court must therefore "'determine what arguments or theories . . . could have supporte[d] the state court's decision; and then [the court] must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court].'" *Id.* (quoting *Richter*, 131

S.Ct. at 786).

As there was clearly a Confrontation Clause violation, this court must identify the Mississippi Supreme Court's reasoning for nonetheless upholding Whitfield's conviction. The court concludes that the state court ruling must be grounded in the doctrine of harmless error. In a *habeas corpus* proceeding, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fry v. Pliler*, 551 U.S. 112, 116, 127 S.Ct. 2321 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637-638, 113 S.Ct. 1710 (1993). The court holds that the introduction of the lab reports did not have such a "substantial and injurious effect or influence." *Id.*

## Whitfield Was Not Convicted on Count III
### (Sexual Battery by Vaginal Penetration)

Whitfield challenges introduction of the laboratory reports showing that both he and D.W. had been infected with trichomonas, a sexually transmitted disease which can only be transmitted through genital-to-genital contact. SCR, Vol. 3, pp. 260, 255, 259, 264. He argues that he did not have the chance to examine or cross-examine the laboratory technicians who conducted the tests, and thus, introduction of the reports violated his Sixth Amendment right to confront witnesses against him – the technicians. Whitfield was not, however, convicted for the charges in Count III of the Indictment – sexual battery by vaginal penetration – the only charge involving genital-to-genital contact. SCR, Vol. 4, p. 402.[8] As trichomonas can only be transmitted through genital-to-genital contact, any evidence regarding trichomonas would only be relevant to Ground III – and would be irrelevant as to Grounds I and II.

---

[8] Count I charged fondling, and Count II charged genital-oral contact.

### In the Absence of the Trichomonas Evidence, the State's Proof Was Sufficient to Sustain a Guilty Verdict as to the Charges for Which Whitfield Was Convicted: Counts I and II of the Indictment

As set forth above, Whitfield was convicted on only two of the three counts of the indictment: Count I (fondling), and Count II (sexual battery through oral penetration), and the trichomonas evidence was not relevant to the remaining charges. Even without the trichomonas evidence, the State's case against Whitfield as to Counts I and II was a strong one. When D.W.'s father took her to the hospital for vaginal discharge and irritation, D.W. told Deborah Rogers, a social worker, that Whitfield had been sexually abusing her. SCR, Vol. 3, p. 185. According to Rogers, D.W. was "[v]ery apprehensive, minimal eye contact, you know, a scared ten-year-old child." *Id.* at 187. She did not want to go back to her mother's house (where Whitfield lived) after her Easter visit with her father. *Id.* at 188. Carla Horn, a counselor with the East Mississippi Children's Advocacy Center, conducted a forensic interview with D.W. shortly after the most recent abuse. *Id.* at 199-200. During the interview, D.W. revealed detailed knowledge of sexual acts – knowledge that no child of ten years should have – and she told Horn that Whitfield had sexually abused her. *Id.* D.W.'s physical examination at the hospital revealed vaginal discharge consistent with trichomonas infection. *Id.* at 223. D.W. also had healed lesions on her labia. *Id.* at 220. A hospital nurse trained in examining sexual assault victims also testified that the condition of D.W.'s hymenal tissue was consistent with sexual penetration. *Id.* at 221. In addition to the statements given during her interview with Carla Horn, D.W. testified at trial – in graphic detail – about the abuse she suffered, and she identified Whitfield as the perpetrator. *Id.* at 267-274.

Furthermore, though Whitfield took the stand, his testimony did more harm to his defense than good. He testified that he treated D.W. more favorably than the other children living in the household.

SCR, Vol. 4, p. 318-319. The jury could well have reached the conclusion that treating D.W. more favorably is consistent with rewarding her silence regarding the abuse. Whitfield also contradicted himself regarding his living arrangements during the time in question. *Id.* at 337-338. Though Whitfield said that he had not resided at D.W.'s house for months prior to the allegations of abuse, he testified that he had kept clothes and belongings there, and, after the allegations, he left his belongings and never got them back. *Id.* at 341. In addition, his testimony was inconsistent with the statements he voluntarily gave to investigators. He initially told investigators that he had little to do with the children in the home, "I don't pay no fricking attention. I'm not there that much. I don't even sleep there. I don't pay attention to little kids at all." *Id.* at 335. However, he testified at trial that he babysat the children, had "a pretty good rapport" with D.W. – and that he gave her special treatment, such a buying her a bicycle before the other children got one. *Id.* at 318-319. According to Whitfield, he "did for [D.W.] before the others because she was the oldest." *Id.* Whitfield also testified that he talked D.W.'s mother into letting D.W. see her father, stating that D.W. "was old enough to be able to pretty much take care of herself and be able to tell if something was going on." *Id.* at 319.

If Whitfield paid no attention to the children, then he could hardly have known enough about D.W. to assess her maturity to make the decision whether to live with her father. In addition, Whitfield testified that he did not know how D.W., who was between five and ten years old during the abuse, came to know about sexual intercourse and other sexual activity in such graphic detail. *Id.* at 345-347. He suggested perhaps that D.W.'s father or brothers could have abused her. *Id.* However, as the prosecutor argued in closing, there was no explanation as to why – if D.W. had suffered the abuse at the hands of her father or brothers – she wished to move away from Whitfield and to her father's house. *Id.* at 379. For these reasons, the court finds that the State presented the jury with

ample evidence to support its guilty verdict as to the charges for which Whitfield was convicted – Count I (fondling) and Count II (sexual battery by oral penetration).

## Harmless Error as to Ground Four

As the trichomonas test results Whitfield challenges were irrelevant as to Counts I and II (the only crimes for which he was convicted) – and as the evidence presented amply supported the jury's verdict as to these counts – the court holds that the State's Confrontation Clause error was harmless. Whitfield has not shown that introduction of the trichomonas evidence (without the technicians present to cross-examine) "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-638, 113 S.Ct. 1710 (1993). As such, Whitfield's request for *habeas corpus* relief as to Ground Four will be denied.

## Ground One: Sufficiency of the Indictment as to Count II

In Ground One, Whitfield alleges that his indictment was defective for Count II - sexual battery. The Mississippi Supreme Court reviewed this issue when it was raised in Whitfield's motion for PCR and found that it had no merit. The court lacks jurisdiction over this issue because Whitfield has failed to allege the deprivation of a federal constitutional right. The sufficiency of a state indictment is not a matter for federal *habeas corpus* review unless the petitioner can prove that the indictment was so defective that the convicting court had no jurisdiction. *Riley v. Cockrell,* 339 F.3d 308, 313-14 (5th Cir. 2003); *Williams v. Collins,* 16 F.3d 626, 637 (5th Cir. 1994) (citing *Yohey v. Collins,* 985 F.2d 222, 229 (5th Cir.1993); *McKay v. Collins,* 12 F.3d 66, 68 (5th Cir. 1994) (*citing Branch v. Estelle,* 631 F.2d 1229 (5th Cir. 1980)). In the absence of a violation of the United States Constitution, "state law dictates whether a state indictment is sufficient to confer a court with jurisdiction." *Williams,* 16 F.3d at 637. If the petitioner presented the sufficiency of the indictment to

the state's highest court, then a federal court may not conduct *habeas corpus* review of that issue. *Liner v. Phelps,* 731 F.2d 1201, 1203 (5th Cir. 1984).

Rule 7.06 of Mississippi's Uniform Circuit and County Court Rules addresses the required elements of an indictment:

> The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them. An indictment shall also include the following:
>
> 1. The name of the accused;
>
> 2. The date on which the indictment was filed in court;
>
> 3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi
>
> 4. The county and judicial district in which the indictment is brought;
>
> 5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient;
>
> 6. The signature of the foreman of the grand jury issuing it; and
>
> 7. The words "against the peace and dignity of the state."
>
> The court on motion of the defendant may strike from the indictment any surplussage, including unnecessary allegations or aliases.

A review of the indictment charging Whitfield indicates that the indictment was in compliance with the requirements set forth in Rule 7.06:

> The Grand Jurors for the State of Mississippi, taken from the body of good and lawful men and women of MONROE COUNTY, in the State of Mississippi, elected, impaneled, sworn and charged to inquire in and for said County aforesaid, in the name and by the authority of the State of Mississippi, upon their oaths present: That
>
> DONALD R. WHITFIELD

COUNT I

in said County and State on or about the 5th day of April, A.D., 2007, being a person above the age of eighteen (18) years, having a date of birth of October 16, 1972, did willfully, unlawfully and feloniously, for the purpose of gratifying his lust or indulging his depraved licentious sexual desires, handle, touch or rub with his hands or other parts of his body, the body of [D.W.], a child under the age of sixteen (16) years, having a date of birth of September 6, 1996, in violation of Mississippi Code, Annotated, Section 97-5-23;

COUNT II

in said County and State between the 6th day of September, A.D., 2000 and the 5th day of April 2007, did willfully, unlawfully and feloniously commit a sexual battery upon [D.W.], a human being and a child under the age of fourteen (14) years, having a date of birth of September 6, 1996, by inserting his penis inside the mouth of [D.W.], in violation of Mississippi Code, Annotated, Section 97-3-95;

COUNT III

in said County and State between the 6th day of September, A.D., 2000 and the 5th day of April 2007, did willfully, unlawfully and feloniously commit a sexual battery upon [D.W.], a human being and a child under the age of fourteen [14] years, having a date of birth of September 6, 1996, by inserting his penis inside the vagina of [D.W.], in violation of Mississippi Code, Annotated, Section 97-3-95

contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Mississippi.

*See* SCR, p. 13-14. After this language, the Circuit Clerk noted that the indictment was filed and recorded on September 7, 2007, and the document was signed by both the Assistant District Attorney and the foreman of the Grand Jury. Thus, the indictment contains all the required elements and clearly put Whitfield on notice of the charges against him. The record is devoid of any demurrer to the indictment by Whitfield at the time of trial. The indictment shows Whitfield's age, as Count I of the indictment at issue states that Whitfield is above the age of eighteen (18), as well as identifying his date of birth is October 16, 1972. "[S]o long as a fair reading of the indictment, taken as a whole, clearly describes the nature and cause of the charge against the accused, the indictment is legally

sufficient." *Sanderson v. State,* 883 So.2d 558 (Miss. 2004)(citations omitted). Reading Count II along with Count I, it is clear that the indictment was sufficient to put Whitfield on notice of the crimes for which he was being charged. Further, Whitfield has not presented any proof that the convicting court lacked jurisdiction to proceed. For these reasons, this court is without jurisdiction to review Whitfield's claim in Ground One. *Riley,* 339 F.3d at 313-14.

### Ground Two: "Constructive Amendment" of the Indictment

In Ground Two, Whitfield claims that the trial judge amended the indictment through jury instructions by "adding essential element not charged by grand jury in Count II." ECF, Doc. 1. It appears that Whitfield's challenge is grounded on the fact that Count II did not contain his name. The Mississippi Supreme Court reviewed this issue in Whitfield's motion for post-conviction collateral relief and found that it had no merit. As discussed above, this court holds the indictment was sufficient to charge Whitfield with sexual battery. In general, challenges to jury instructions may not form a basis for federal *habeas corpus* relief, *Gilmore v. Taylor*, 113 S.Ct. 2112, 2118-19, 124 L.Ed.2d 306, 318 (1993); *Estelle v. McGuire*, 502 U.S. 62, 71-71 (1991), unless the petitioner shows that an improper instruction rose to the level of a constitutional violation. *Taylor*, 113 S.Ct. at 2121, 124 L.Ed.2d at 322; *McGuire*, 502 U.S. at 72. To show that erroneous jury instructions were prejudicial enough to support a collateral attack on a state court's judgment, "[a] petitioner must show that the erroneous instruction by itself so infected the entire trial that the resulting conviction violates due process." *Mayabb v. Johnson*, 168 F.3d 863 (5th Cir. 1999), citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

In the present case Whitfield has not shown that any given instruction "so infected the entire trial" that his due process rights were violated. He was indicted for committing sexual battery "by

inserting his penis inside the mouth of [D.W.]" between September 6, 2000, and April 5, 2007. Under Mississippi Code Annotated § 97–3–95(1)(d) (Rev.2006), "[a] person is guilty of sexual battery if he or she engages in sexual penetration with . . . [a] child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child." Under Mississippi Code Annotated § 97–3–97(a) (Rev. 2006), "sexual penetration" includes fellatio. Whitfield argues that he was not properly put on notice of the sexual battery charge because his name was not in the language in Count II of the indictment. This argument is frivolous, as the name "DONALD R. WHITFIELD" can be found in all capital letters at the top of the indictment. To obtain *habeas corpus* relief based upon an improper jury instruction, a petitioner must establish that the instruction rose to the level of a constitutional violation so pervasive that caused the trial itself to be a violation of due process. Whitfield has wholly failed to show that any instruction was improper at all, much less that an instruction undermined due process in the criminal proceeding. *Mayabb*, 168 F.3d 863. The state court's resolution of the claims in Ground Two was not contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. This ground for relief is wholly without merit and will be denied.

### Ground Three: Whether the Affidavits Were Sufficient to Establish Probable Cause

In Ground Three, Whitfield argues that the affidavits used to support various search warrants in his criminal proceeding were deficient; thus the law enforcement officers did not have authority to conduct the searches (mostly to retrieve biological evidence from Whitfield). The Mississippi Supreme Court reviewed this issue in Whitfield's motion for post-conviction collateral relief and found that it had no merit. "[W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal *habeas corpus* relief on the

ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial . . . ." *Stone v. Powell*, 428 U.S. 465, 482 (1976). The petitioner bears the burden to prove that he was denied a full and fair hearing. *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986). Whitfield presented this issue to the Mississippi Supreme Court in his application to initiate post-conviction collateral relief. The State responded to Whitfield's application, and the Mississippi Supreme Court denied it. Whitfield has made no showing that the decision by the Mississippi Supreme Court denied him a full and fair opportunity to present this claim; as such, this court cannot consider the issue further. *See Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978) (consideration of a Fourth Amendment on the merits by a state appellate court bars *habeas corpus* review of that claim under *Stone v. Powell*, 428 U.S. 465 (1976)). Donald Whitfield had the opportunity to litigate the Fourth Amendment claim in state court, and he raised the issue on state post-conviction collateral relief. As such, Whitfield's illegal search and seizure claim is barred from federal *habeas corpus* review under *Stone*, *infra*.

## Conclusion

In sum, the instant petition for a writ of *habeas corpus* is without merit and will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 3rd day of June, 2015.

       /s/ Sharion Aycock
       **U.S. DISTRICT JUDGE**